UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ABE J. LINDSEY, JR. #414993**              **CIVIL ACTION**

**versus**                                    **NO. 06-7852**

**JEFFERY TRAVIS, WARDEN (RCC)**             **SECTION: "F" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Abe J. Lindsey, Jr., is a state prisoner incarcerated at the Rayburn Correctional Center, Angie, Louisiana. On July 27, 1999, he was found guilty of attempted second-degree murder in violation of La.Rev.Stat.Ann. § 14:(27)30.1.[2] On September 27, 1999, he was sentenced to a term of thirty years imprisonment without benefit of probation, parole, or suspension of sentence, but with credit for time served.[3] On April 11, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4] He then filed with the Louisiana Supreme Court an application for a writ of certiorari and/or review which was denied on March 28, 2002.[5]

On July 19, 2002, petitioner filed with the state district court an application for post-conviction relief.[6] When the state district court failed to rule on that application, he filed with the Louisiana Fourth Circuit Court of Appeal a petition for a writ of mandamus.[7] On August 24, 2005, the appellate court denied that application, noting that it had reviewed petitioner's underlying post-

---

[2] State Rec., Vol. I of III, minute entry dated July 27, 1999; State Rec., Vol. I of III, jury verdict form.

[3] State Rec., Vol. I of III, transcript of September 27, 1999, p. 3; State Rec., Vol. I of III, corrected minute entry dated September 27, 1999.

[4] State v. Lindsey, 786 So.2d 814 (La. App. 4th Cir. 2001) (No. 2000-KA-0301); State Rec., Vol. I of III.

[5] State v. Lindsey, 812 So.2d 646 (La. 2002) (No. 2001-KO-1422); State Rec., Vol. I of III.

[6] Supplemental State Rec., Vol. I of I.

[7] State Rec., Vol. II of III.

conviction claims and determined that he was not entitled to relief.[8] He then filed with the Louisiana Supreme Court an application for a writ of certiorari[9] which was denied on August 18, 2006.[10]

On September 13, 2006, petitioner filed this federal application for *habeas corpus* relief.[11] In support of his application, he raises the following claims:

1. Petitioner's rights under the federal Confrontation Clause were violated when hearsay evidence was wrongly admitted at trial; and

2. Petitioner received ineffective assistance of counsel.

The state does not argue that petitioner's federal application is untimely or that he failed to exhaust his state court remedies. Accordingly, this Court will address the merits of his claims.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

---

[8] State v. Lindsey, No. 2005-K-1185 (La. App. 4th Cir. Aug. 24, 2005) (unpublished); State Rec., Vol. II of III.

[9] State Rec., Vol. III of III.

[10] State *ex rel.* Lindsey v. State, 935 So.2d 143 (La. 2006) (No. 2006-KH-0356); State Rec., Vol. III of III.

[11] Rec. Doc. 1.

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeals summarized the facts of this case as follows:

Shortly before midnight on May 6, 1999, William Francois was standing on Whitney Avenue selling drugs with the defendant and another friend. Defendant asked him to sell bunk cocaine to some white boys. Francois refused. Defendant left, then returned about ten minutes later. As defendant walked toward Francois, he raised a gun and shot Francois once in the chest area and once in the leg. Francois testified that he was unarmed when he was shot and had not tried to attack defendant.

Francois spent approximately two months in the hospital after the shooting. One bullet remains lodged in his spine, and as a result Francois is paralyzed below the waist and is confined to a wheelchair. Francois identified defendant from a photographic lineup that occurred in the hospital shortly after the shooting. He testified that he had known defendant for about six years, and that defendant is the first cousin of his girlfriend, Iesha Randall.

Iesha Randall testified that she was in her sister's house when the shooting occurred. Shortly before the incident, defendant told her "a nigger was gonna pop 'Peddle' up." Francois's nickname is Peddle. Defendant then walked outside on the porch and returned with something like soap powder in a bag. He said he was going to ask Francois to sell it. A short while after that, Ms. Randall got a call from a friend who told her that Francois had been shot. Randall and others ran to the scene. Randall testified that she saw defendant running away from the scene with a gun. She further testified that she heard defendant say, as he passed her, "[He's] gonna wish he would have sold it."[12]

### Confrontation Clause

At trial, Iesha Randall stated that she was told by "Heather" that petitioner shot the victim.[13] Petitioner claims that Randall's statement was inadmissible hearsay and violated his rights under the Confrontation Clause.

---

[12] State v. Lindsey, 786 So.2d 814, 816 (La. App. 4th Cir. 2001) (No. 2000-KA-0301); State Rec., Vol. I of III.

[13] State Rec., Vol. I of III, transcript of July 27, 1999, pp. 27 and 37-38.

On direct appeal, petitioner argued that the trial court erred in denying a motion for mistrial based on Randall's statement. The Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C); State v. Richardson, 97-1995, p. 13 (La.App. 4 Cir. 3/3/99), 729 So.2d at 121, writ denied, 99-1087 (La. 9/24/99), 747 So.2d 1119. Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La C.E. art. 802.
> The subject hearsay testimony occurred during the direct examination of Iesha Randall. In response to general questions about what happened on the day of the shooting, Ms. Randall testified that, after defendant left, "Heather ... called and told [her] that William [Francois] was shot on the front by my little cousin." Defense counsel immediately asked that the jury be excused. Instead, the trial court overruled the objection as to relaying the information about the actual shooting, but sustained it as to any elaboration or detail. Defense counsel then made his motion for mistrial for the record. He argued the motion outside the jury's presence at the conclusion of the State's case.
> Defense counsel argued that the State had an obligation to prepare its witnesses more thoroughly. The prosecutor noted, for the record, that he was aware that Ms. Randall received a phone call that the victim had been shot, but did not know that she had been told the identity of the shooter.
> Technically, the critical hearsay, that defendant was the shooter, was not admitted into evidence. However, as noted by defense counsel at trial, "you can't unring the bell."
> Defense counsel questioned Ms. Randall about the person who made the statement. Ms. Randall testified that she knew her only by her first name, "Heather." She further testified that Heather told her that she saw the shooting, but did not want to "get into it with his relatives." For that reason, Ms. Randall did not give the investigating officer Heather's name as a witness.
> Ms. Randall's testimony regarding Heather's statements is classic hearsay that does not meet any exceptions to the hearsay rule. The statements are clearly inadmissible and should have been excluded by the trial judge.

> Hearsay evidence that is improperly admitted into evidence may be considered harmless error if the reviewing court determines beyond a reasonable doubt that the hearsay evidence did not contribute to the verdict. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Atkins, 97-1278 (La.App. 4 Cir. 5/27/98), 713 So.2d 1168, 1178; State v. Anderson, 450 So.2d 684, 686 (La.App. 4 Cir.1984).
>
> In the case at bar, the erroneous admission of the hearsay statements was harmless error. The jury was presented with substantial evidence to convict defendant without the hearsay statements. The victim testified that he knew his assailant well and positively identified him. The victim's girlfriend saw her cousin, defendant, running away from the shooting, with a gun in his hand, and saying "He's gonna wish he would have sold it," when the victim had refused to make a sale of bunk cocaine for him. There was no contradicting testimony or other evidence. There is no reasonable possibility that the hearsay evidence contributed to the verdict.
>
> This assignment is without merit.[14]

As he now also does in this Court, petitioner asserted in his state post-conviction application a related claim that the hearsay statement violated his rights under the federal Confrontation Clause. The Louisiana Fourth Circuit Court of Appeal rejected that claim on the ground that petitioner had not demonstrated that he was entitled to relief.[15] "Whether admission of hearsay evidence violated a defendant's Sixth Amendment right of confrontation is a mixed question of law and fact ...." Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997). Therefore, this Court may grant relief on this claim only if petitioner demonstrates that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as

---

[14] State v. Lindsey, 786 So.2d at 816-17; State Rec., Vol. I of III.

[15] State v. Lindsey, No. 2005-K-1185 (La. App. 4th Cir. Aug. 24, 2005) (unpublished); State Rec., Vol. II of III.

determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). The Court finds that he has not made that showing.

>The United States Fifth Circuit Court of Appeals has held:
>
>>Although the protections of the Confrontation Clause and the hearsay rule overlap, they are not co-extensive; the [Confrontation] Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause. The wrongful admission of hearsay evidence violates the Confrontation Clause only when the evidence was a crucial, critical or highly significant factor in the framework of the whole trial. In making this determination, we consider five general factors derived from the Supreme Court's opinion in Dutton v. Evans, 400 U.S. 74, 87, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970):
>>
>>>(1) whether the hearsay evidence was crucial or devastating;
>>>(2) whether prosecutors misused a confession or otherwise engaged in misconduct;
>>>(3) whether a joint trial or the wholesale denial of cross-examination was involved;
>>>(4) whether the most important prosecution witness, as well as other prosecution witnesses, was available for cross-examination; and
>>>(5) the degree to which the hearsay evidence is supported by indicia of [its] reliability.

Gochicoa, 118 F.3d at 446 (quotation marks and citations omitted). The Fifth Circuit continued:

>The determination of whether evidence is "crucial" or "devastating" ... recognizes that the erroneous admission of unreliable hearsay evidence may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was "crucial" or "devastating," the court seeks to determine whether the impermissible hearsay was sufficiently damaging to the defense to warrant reversal.

Id. at 447. The Fifth Circuit has similarly noted:

>[V]iolations of the Confrontation Clause are still subject to harmless error analysis. ... To determine whether the error was harmless, we

> consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Hafdahl v. Johnson, 251 F.3d 528, 539-40 (5th Cir. 2001) (quotation marks omitted).

It is evident that the Confrontation Clause was implicated by the admission of the hearsay statement in the instant case. Jurors were made aware of the fact that "Heather" allegedly identified petitioner as the perpetrator of this crime, and petitioner was deprived of the opportunity to confront "Heather" and test the basis of her knowledge.

However, this Court notes that the testimony regarding Heather's statement was not planned by the prosecutor, who disclaimed any knowledge that Heather ever identified the killer.[16] Moreover, Heather's statement was mentioned only in passing and was not highlighted in any way by the prosecution. Most important, of course, is the fact that the testimony was cumulative and of little consequence in light the victim's emphatic identification of petitioner, a person well known to him, as the shooter. There is simply no reason to believe that the hearsay statement played *any* role in the jury's decision, much less that it was "a crucial, critical or highly significant factor in the framework of the whole trial," Gochicoa, 118 F.3d at 446, and, in any event, it was ultimately harmless in light of the overwhelming evidence of petitioner's guilt.

In light of the foregoing, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his Confrontation Clause claim was contrary to, or involved an

---

[16] State Rec., Vol. I of III, transcript of July 27, 1999, pp. 49-50.

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court likewise rejects that claim.

### Ineffective Assistance of Counsel

Petitioner claims that his counsel was ineffective. When this claim was presented in the state post-conviction proceedings, it was rejected on the ground that petitioner had not demonstrated that he was entitled to relief.[17]

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See id. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).

---

[17] State v. Lindsey, No. 2005-K-1185 (La. App. 4th Cir. Aug. 24, 2005) (unpublished); State Rec., Vol. II of III.

- 10 -

Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In the instant case, petitioner contends that his counsel was ineffective in numerous respects. The Court will address each of petitioner's contentions.

Petitioner first challenges counsel's pretrial investigation and failure to call witnesses for the defense. In particular, petitioner contends that "[t]rial counsel failed to conduct pre trial interviews with Petitioner to determine what defenses were available, which witnesses to subpoena, etc.," "failed to pursue discovery requests," and "failed to conduct any pretrial investigation." He further contends that "[d]efense counsel failed to subpoena any witness for trial, including Heather Crosby ... a material eyewitness," and "[d]efense counsel failed to move for an instanter subpoena or continuance when he learned that Heather Crosby was an eyewitness to the shooting." He also contends "[d]fense counsel failed to request funds to hire defense expert witnesses."[18]

To the extent that petitioner is contending that counsel failed to adequately investigate the case or pursue discovery, his claim falls woefully short. A petitioner asserting a claim for inadequate investigation bears the burden to provide *factual support* for his allegations as to what further investigation would have revealed. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998). He has not even alleged what exculpatory information might possibly have been revealed by further investigation or discovery, much less provided factual support for those allegations.

The related claim that counsel was ineffective in failing to secure the presence of Heather or other lay witnesses for the defense similarly fails. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have

---

[18] Rec. Doc. 1, supporting memorandum, p. 13.

- 12 -

testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'"  Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  Petitioner furnished neither the state courts nor this Court any evidence, such as an affidavit from Heather or any other lay witness, that such witnesses would have provided exculpatory testimony or, for that matter, would have testified at trial at all.  Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to interview or call such witnesses for the defense.

As to the failure to call expert witnesses, the United States Fifth Circuit Court of Appeals has noted:

> [U]nsupported claims regarding [an] uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel.  Furthermore, [a petitioner] must be able to show a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt.

Evans, 285 F.3d at 377.  In the instant case, petitioner does not even suggest what type of expert witness could have conceivably been beneficial to the defense.  Petitioner was convicted based on the fact that he was identified by the victim as the shooter, *not* on any physical evidence which perhaps could have been refuted through an expert witness.[19]  Therefore, petitioner has made no

---

[19] The only physical evidence presented by the state at trial was the photographic line-up shown to the victim and the hat and shirt worn by the victim at the time of the shooting.  That evidence was

showing that the jury would have had a reasonable doubt as to his guilt if only counsel had presented expert testimony.

Petitioner next argues that "[d]efense counsel failed to put on any defense after the State rested."[20] However, petitioner identifies no potentially viable defense available that defense counsel eschewed. Therefore, petitioner has fallen woefully short of meeting his burden to establish that his counsel performed deficiently. Sometimes, as is evidently the case here, when representing an obviously guilty client, counsel's only choice is to vigorously test the state's case and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt. Simply because counsel was unable to fashion a nonexistent defense out of whole cloth does not mean that he performed deficiently.

Next, petitioner argues that defense counsel "failed to file necessary pretrial motions and/or withdrew the motions he did file without first consulting with Petitioner" and "failed to file and pursue motions to suppress the evidence, physical and otherwise."[21] Again, petitioner has made no showing whatsoever that any *meritorious* pretrial motions were abandoned or left unfiled. As to motions to suppress evidence, he has not identified any basis on which the evidence used against him was in fact suppressible. Again, it is noted that petitioner was convicted based on testimonial

---

of no consequence. Petitioner does not contend that the photographic line-up was tainted in any way or that the victim was not in fact wearing that clothing at the time of the incident.

[20] Rec. Doc. 1, supporting memorandum, p. 13.

[21] Rec. Doc. 1, supporting memorandum, p. 13.

evidence,[22] *not* physical evidence. He simply has not shown that counsel's failure to pursue pretrial motions constituted deficient performance in any way, much less that prejudice resulted.

Lastly, he claims that "[d]efense counsel failed to question whether petitioner had, or could have formed the specific intent to kill at age 16."[23] However, petitioner has presented no evidence, as is his burden, showing that he was in fact incapable of forming the requisite criminal intent. As a result, he cannot establish either deficient performance or prejudice, and his claim necessarily fails.

In summary, petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court likewise rejects that claim.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Abe J. Lindsey, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[22] Counsel did in fact file a motion to suppress petitioner's identification, and that motion was denied after an evidentiary hearing. State Rec., Vol. I of III, transcript of July 14, 1999.

[23] Rec. Doc. 1, supporting memorandum, p. 13.

court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this nineteenth day of March, 2007.

                                        **SALLY SHUSHAN**
                                        **UNITED STATES MAGISTRATE JUDGE**